Patterson Building and Loan Association No. 2 v. Bolif et ux.

*George M. Henry,* for plaintiff; *Peter P. Zion,* for defendants.

MacNeille, J., November 7, 1932.—We are considering a petition and rule to open judgment.

The plaintiff entered judgment on bond of the defendants on April 7, 1932. This bond was accompanied by a mortgage on premises No. 2851 North Twenty-second Street, which was given by defendants as security to the plaintiff building and loan association.

Defendants are the owners of forty-eight shares of stock in the plaintiff building and loan association on which they have paid dues in the amount of $4804.

On May 30, 1931, the plaintiff association issued its statement for the year ending on that date, showing it had earned profit on the shares of stock owned by the defendants in the amount of $1110.33.

On December 11, 1931, defendants requested plaintiff association to cancel the stock, and to apply the moneys paid by them on account of their stock,

together with the profits earned as shown by the statement, in payment of the above bond and mortgage. In addition, they tendered $586 as the balance due on their debt. This the plaintiff association refused to do, assigning as its reason that it had suffered losses which showed that its statement as to profit was in error. Then, on December 31, 1931, defendants tendered an additional amount so as to cover their shares of the error in statement of profit which the association claimed was due to losses sustained after its statement had been made, but plaintiff refused to accept this tender. Thereupon, on April 7, 1932, plaintiff entered judgment as above referred to. Hence this petition and rule to open judgment.

To this petition to open judgment plaintiff filed an answer, contending that the values of the stock were not as averred in the petition, but without setting forth the value of the stock. We think such a pleading by the plaintiff association is valueless because of the fact that the plaintiff association should set forth in its answer whether the stock has any value and if so what the value may be.

The plaintiff association further sets forth that the board of directors deemed it advisable not to pay any profits on withdrawals of stock, but to allow on withdrawals only the amount of money actually paid in for such stock, and that the association had suffered losses by reason of depreciation of market value of properties and that it was unable to state the amount of such losses.

This averment is not sufficient as it is vague and indefinite. It does not say what the losses are nor does it even submit the results of an appraisement. It is merely an expression of opinion not based on facts.

The plaintiff association then filed an amended answer, stating that the stockholders passed a resolution that no profits were to be paid upon withdrawals. This was an attempt to do by resolution that which must be done by by-law. The Act of April 10, 1879, P. L. 16, Sec. 2, provides:

"Stockholders withdrawing voluntarily, shall receive such proportion of the profits of the association or such rate of interest as may be prescribed by the by-laws, any law or usage to the contrary notwithstanding . . ."

If this act means anything, it means that a by-law must be adopted by the association, and it is incumbent upon the plaintiff association to show that what it does is in pursuance of such by-law. What the plaintiff association refers to is merely a resolution, but there is no effort on the part of the association to show a compliance with its charter and by-laws as to adopting or amending by-laws. This the plaintiff should show. See Alters v. Journeymen Bricklayers Protective Ass'n, 19 Pa. Superior Ct. 272, where the court held:

"In an action against a beneficial association [where a by-law is set up to prevent plaintiff's recovery], . . . the burden of proving the lawful adoption of the by-law is on the defendant, and such burden is not met by the testimony of one witness that the by-law was adopted at a meeting of the corporation, without any proof of the date of the meeting [at which it was adopted] . . . or that notices thereof had been sent out."

Even if the resolution is considered to be a by-law, it is contrary to the Act of 1879, supra, because it attempts to deny to withdrawing stockholders their shares of profit, and a building and loan association cannot do this even by by-law. The by-laws of a corporation are subordinate to the laws of the Commonwealth. See Lutz v. Webster, 249 Pa. 226.

The provisions of this act are mandatory and as long as there is a profit the withdrawing stockholder must be given a share or interest on his money. See Hockfield v. Woloderker Building and Loan Ass'n, 85 Pa. Superior Ct. 336, where the court held that a resolution to refuse a share of profit contravenes

the act; there must be a by-law fixing a share of profit or declaring a rate of interest.

In Hockfield v. Woloderker Building and Loan Ass'n, supra, the court held:

"Where the by-laws of a building association fail to prescribe the proportions of profits or the rates of interest to which withdrawing shareholders are entitled, they can demand, in addition to the amount paid by them, interest at a lawful rate, less fines and proper charges.

"Under the Act of April 10, 1879, P. L. 16, requiring that stockholders withdrawing voluntarily shall receive such proportion of the profits of the association, or such rate of interest as may be prescribed by the by-laws, a by-law providing that such shareholder shall be entitled to 'interest or such proportion of the profits as the board of directors shall determine, less the expenses on each share,' is illegal.

"The act makes it mandatory for the association to fix the proportion of the profits or the rate of interest by the by-law, and it is not a compliance with the terms of the statute to delegate to the directors of the association the right to fix the proportion of the profits or the amount of interest, which withdrawing stockholders shall receive."

It is no answer to this for the plaintiff association to say that it is withholding payment of profit to set aside a reserve or contingent fund. This is governed by the Act of Assembly of May 14, 1913, P. L. 205, Sec. 1 (a), as amended by the Act of April 8, 1927, P. L. 179, Sec. 1, as follows:

"Section 1. Be it enacted, &c., That it shall be lawful for any mutual savings fund or building and loan association, now incorporated or hereafter to be incorporated:

"(a) To set aside from the net profits a sum, not to exceed fifteen per centum thereof each year, as a reserve fund for the payment of contingent losses, until the total amount of such fund so set aside shall equal fifteen per centum of the assets of such association: Provided, That no association shall reduce the dividend or interest payable on voluntary withdrawal, as fixed by the board of directors or its by-laws for that purpose, and all such funds heretofore accumulated by any such association from its profits, not in excess of fifteen per centum of the assets, are hereby confirmed and made valid: Provided, however, That if at any time the assets of the association shall become reduced in amount, and the contingent fund should thereby exceed fifteen per centum of the remaining assets of the association, then, at the next dividend period, the amount in excess of fifteen per centum in said contingent fund shall be transferred to the general profit account of such association."

Clearly this act limits the right of an association in the creation of a contingent or reserve fund. It seems to guard jealously the rights of withdrawing stockholders and provides that even after such fund is accumulated, if a shrinkage of assets takes place which leaves the fund more than fifteen per centum of the assets, such excess in the fund must be transferred to the general profit account. It also means that the annual deduction cannot be cumulative. Fifteen per cent. deduction must be in a year in which the profit is made. If a profitless year is passed and a subsequent year is more profitable, still only fifteen per cent. may be taken from the profitable year. This seems to be a reasonable interpretation and is the one made in the attorney general's opinion, In re B. & L. Associations, 69 Pitts. L. J. 191.

We think these positive mandates of the law make it impossible for building and loan associations to govern withdrawals by a resolution in lieu of the by-laws. It is likewise impossible even by by-law to deny the withdrawing stockholder a share of profit where one exists. It is likewise impossible for the asso-

ciation to make it appear that there is no profit by transferring to contingent or reserve fund contrary to the Act of 1913, as amended by the Act of 1927, supra.

Even if these acts of assembly do not forbid this action on the part of the association, yet a by-law denying a share of profit to withdrawing stockholders would be unlawful on the general ground of its unreasonableness, and by-laws of building and loan associations must be reasonable in order to be by-laws. In addition, they must be in conformity with existing laws and with their charter.

In the instant case there is no contention that the association was insolvent at the time the stockholders sought cancellation of their shares and indebtedness, but there is an implication in the pleadings that the association will suffer future losses, and that it had not at the time of the attempted cancellation sufficient cash to meet withdrawals. The status of the association must be considered as of the date on which the cancellation was requested. There being no averment that the association was insolvent at that time, there is no defense in this regard. As to the contention that the association was without sufficient funds to meet the withdrawal, we are forced to conclude that this contention is unimportant, because the association would not have required any funds to pay to these shareholders—the association merely would have canceled their debt, and in addition thereto the association would receive from them a sum in cash to add to the association's funds in its treasury.

We believe that the right of the stockholder to have the association appropriate the value of his stock on account of payment of his indebtedness is fixed by the Act of April 30, 1929, P. L. 901, and he has such right, but regardless of this act it is likely that the association can refuse to take any action demanded by a withdrawing shareholder that would impair the association's capital to the detriment of other shareholders. However, there seems to be no such contention on the part of the association in this case, but it may be that in this respect it desires to amend its pleading.

Therefore, the rule to open judgment is made absolute.